## Mont-Bux, Inc. v. Bates

*John P. Knox*, for plaintiff.

*Daniel B. Michie, Jr.*, for building inspector and township manager.

*Samuel H. High, Jr.*, for intervenors.

HONEYMAN, J., June 24, 1971.—This is an action in mandamus commenced by a landowner-developer against the building inspector and manager of the Township of Abington, praying the court to direct the issuance of building permits. Plaintiff's subdivision plan for the tract in question was approved by the Abington Township Zoning Hearing Board on March 6, 1970. At the time, this property was zoned "AO," apartment-office, which permitted construction of single-family dwellings, as well as duplex, triplex and apartment house structures.

Subsequently, the township rezoned the property to the "H" classification, which would permit only single-family dwellings. Plaintiff contends that such rezoning ordinance cannot affect its right to the building permits for four of the lots in the subdivision

which are in dispute, because such proposed rezoning was not "pending" at the time its rights accrued, and, further, that section 508 of the Pennsylvania Municipalities Planning Code establishes a vested right in plaintiff under the facts herein. Alternatively, plaintiff raises the question of special legislation with respect to the amendatory ordinance.

## FINDINGS OF FACT

1. Plaintiff Mont-Bux, Inc., is a Pennsylvania corporation in the business of constructing residential structures.

2. Plaintiff is now, and has been for some time prior to December 10, 1969, the legal owner of a certain tract of land now subdivided into 16 lots situate on the northwest side of Fitzwatertown Road from Woodland Road to a point 683 feet northeast therefrom and on the southeast side of North Hills Avenue from Woodland Road to a point approximately 738 feet northeast therefrom, containing 2.4 acres.

3. This tract is located in a district zoned "AO" apartment-office under Zoning Ordinance of the Township of Abington, No. 643, enacted December 8, 1949, as amended (since rezoned to "H" residential).

4. On December 10, 1969, application was made to the township for permission to subdivide the property into 17 building lots in order to erect single family dwellings thereon.

5. Before the zoning hearing board, on February 24, 1970, plaintiff's representative testified that it was their intention to erect single-family dwellings on each of the 17 lots. Application had been made also, for the purpose of requesting a variance for depth requirements on four lots, two of which were

only deficient by two feet, one by one and one-half feet, and the other by 17 feet.

6. At this hearing it was divulged that Abington Township Commissioners had tentatively approved the subdivision plan, but the board was required to consider the matter of the variances sought as to the four lots.

7. Testimony at this hearing revealed an attempt by a previous owner to develop a 50-unit apartment building on this same tract which was strongly opposed by the neighborhood, and such plan was abandoned.

8. The transcript of the hearing clearly reveals that the board was fully aware of the permitted uses under the "AO" zoning classification, and that plaintiff was not limited to constructing single-family dwellings.

9. On March 4, 1970, the board approved 16 lots instead of the 17 applied for, requiring elimination of irregularly shaped lot 11, its area to be allocated among the other lots, and issued the following order:

"Be it further resolved, that approved sub-division must be filed in the Recorder of Deeds Office at Norristown, Pennsylvania within six (6) months from date hereof, otherwise, the Zoning Hearing Board's certificate shall become null and void."

Lots 11 and 12 were the two lots deficient in depth by only two feet. Presumably, by the board's order, they granted the remaining three variances sought.

10. Neither the township commissioners, nor the zoning hearing board, by any action with respect to subdivision approval or the granting of these slight variances, directed a limitation of use to single-family dwellings.

11. Pursuant to the board's direction, a new plan was prepared by plaintiff's engineer on March 11, 1970. This was presented to the township for ap-

proval on March 24, 1970, and received same on April 9, 1970, without any use limitation.

12. This approved subdivision plan was recorded, as required, on April 30, 1970.

13. On May 4, 1970, Township Commissioner Hugh O'Neill, who represents that ward of Abington Township wherein the tract in question lies, and who was in attendance before the zoning board hearing for the purpose of conveying the desire of himself and his constituents that single-family dwellings only should be permitted to be erected, came before the Department of Public Safety of his own volition and expressed the opinion that plaintiff was "applying under the 'H' zoning classification and not the 'A-O' zoning classification as the property is zoned"; he recommended a change in zoning limited exclusively to plaintiff's 2.4 acre tract from "AO" to "H" residential.

14. The planning commission heard Commissioner O'Neill's "suggestion" on May 26, 1970, and referred the matter back to the Department of Public Safety with recommendation that the board of commissioners set a public hearing to rezone the property.

15. No notice of any sort of either of these aforementioned meetings was given plaintiff or its counsel.

16. On May 28, 1970, plaintiff applied, through one of its principals, Henry McCullough, to the township building inspector, Charles Bates, for building permits to construct a single-family dwelling on lot no. 14 and a duplex structure on lot no. 13.

17. A permit was promptly issued for lot no. 14, but the request for permit for the duplex unit was denied for lot no. 13.

18. On June 1, 1970, Mr. McCullough spoke with Fred F. Schaeffer, the Abington Township Manager,

and was advised of the township's intention to rezone the property to the "H" residence zoning district classification, and that no permits for the construction of duplex or triplex structures would be issued.

19. Plaintiff had no notice whatsoever prior to June 1, 1970, of an "impending" zoning change affecting its property.

20. The Department of Public Safety recommended that July 9, 1970, be the date for the rezoning hearing. On June 11, 1970, the board of commissioners did set July 9, 1970, as the date for hearing. Eo die, plaintiff's counsel, by letter addressed to Mr. Schaeffer, objected to the rezoning and asserted his client's position.

21. On June 16, 1970, plaintiff applied for additional permits for single-family dwellings on 11 lots, and for permits for a triplex dwelling on lot 11 and duplex dwellings on lots 10 and 16. The minimum lot area required is 5,000 square feet. Lot 11, on the officially approved subdivision plan contains 9,921 square feet, lot 10 contains 7,160 square feet, and lot 16 contains 7,015 square feet.

22. The township advertised on June 18 and 25, 1970, notice of the rezoning hearing.

23. This hearing was held on July 9, 1970, and plaintiff's tract was rezoned from "A-O" to "H" residence classification. No other zoning legislation was enacted at that time, and the amending ordinance affected no land in the township other than plaintiff's tract.

## DISCUSSION

Justice Musmanno said in Yocum v. Power, 398 Pa. 223, 227 (1960):

". . . nothing is more frowned on in civil law than a procedure which has the effect of making illegal what the law has already recognized as legal."

Plaintiff's 2.4 acre tract had been subdivided and its plan approved after what appears to have been a lengthy and comprehensive hearing before the zoning hearing board on February 24, 1970. A review of the testimony taken at that hearing reveals some concern by the neighbors, and the commissioner representing the ward in question, about the density and traffic problems to be created by this development. Yet, no limitation was imposed on the approval given to the revised subdivision plan as to use.

Both the commissioners and the zoning hearing board were undoubtedly aware of the permitted uses to which property zoned "AO" could be put. Defendants' answer admits that section 901 of Abington Township's Zoning Ordinance permits development of duplex and triplex structures and apartments, as well as single-family dwellings in "AO" apartment-office districts. The situation created by the township's actions herein is similar to the facts in Yocum v. Power, supra. Plaintiff, relying on the township law as it was in the spring of 1970 had commenced development of its approved subdivision, only to be confronted by the rapid, concerted action to make more restrictive the zoning regulations pertaining to its tract.

The Pennsylvania Municipalities Planning Code of July 31, 1968, touches upon this very point in section 508, 53 PS §10508, where in subsection (4) it is provided, in part, that:

". . . When an application for approval of a plat, whether preliminary or final, has been approved or approved subject to conditions acceptable to the applicant, no subsequent change or amendment in the zoning, sub-division or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to com-

plete any aspect of the approved development in accordance with the terms of such approval within three years from such approval."

It should be noted approval was in no way limited to development of single-family dwellings only.

Robert Ryan, Esq., commenting in his treatise, Pennsylvania Zoning, Law and Practice, in section 2.2, page 34, says that the Pennsylvania Municipalities Planning Code, as a newly enacted piece of legislation, has been uncertain in its application. Section 508(4) certainly is a major innovation in the law created by the legislature. Heretofore, an owner of land obtained no vested right by virtue of an approved subdivision plan unless the zoning ordinance expressly created it, or if he had, in good faith, expended substantial sums in reliance upon previously existing zoning regulations. The code now introduces a three-year protection to subdivisions.

Certainly, if the rezoning ordinance herein had been pending prior to approval and recordation of plaintiff's subdivision plan, or at least prior to application for the first building permit for a duplex, we would conclude that such rezoning was validly impressed upon this tract, unless, of course, it was special legislation as plaintiff alternatively contends. In a recent Supreme Court decision, Mutzig v. Hatboro Board of Adjustment, 440 Pa. 455 (1970), the court said that an amendatory zoning ordinance cannot be considered pending until there is a public declaration by the municipality that it intends to rezone the area, and the public declaration does not occur until the municipal council advertises that a public meeting will be held to consider adopting the zoning amendment. "Discussion in the council alone is not a public declaration. . . ."

It is uncontroverted that plaintiff's subdivision

plan was approved on March 4, 1970. It was not until May 4, 1970, that Commissioner O'Neill, of his own volition, went before the Department of Public Safety to request a zoning change. On May 26, 1970, the planning commission, acting on recommendation of the Department of Public Safety, recommended to the board of commissioners that a hearing date be set on the proposed change. It was not until June 11, 1970, that the board adopted July 9, 1970, as the date for hearing. During this period of time, the township did issue single-family dwelling permits to plaintiff, but not until June 1, 1970, did plaintiff have any knowledge of a proposed zoning change affecting its land. On June 18th, and again on June 25, 1970, the township advertised in the local newspaper its intention to consider the rezoning of the scheduled hearing on July 9, 1970. Official notice of the impending change occurred at a June 11, 1970, commissioners' hearing which plaintiff attended. Under these facts, the decision in Lhormer v. Bowen, 410 Pa. 508 (1963), should be applicable.

That case would have required a hearing before, or at least a public declaration by, the township commissioners concerning the prospective rezoning prior to May 28, 1970, the date plaintiff filed for a building permit for the duplex and was refused. In this regard, the township's contention of actual notice is rejected in that the court finds the uncontroverted testimony of plaintiff's witnesses credible insofar as it pertains to its lack of knowledge relating to defendant's exhibit no. 1, a clipping from the local newspaper of May 28, 1970, indicative of a proposed zoning change affecting plaintiff's tract.

The court must determine whether plaintiff is entitled to the relief it seeks, viz., a decree directed

to defendants to issue the permits for lots 10, 11, 13, and 16. In Lhormer, at page 514, it held that:

"By the same token, where the right to the permit is clear, the issuance thereof by the proper official is no more than performance of a ministerial act which admits of no discretion in the municipal officer, and mandamus is both appropriate and proper to compel performance." (Cases cited.)

The test to determine eligibility for the benefits of a mandamus decree were recently explored in Martin v. Garnet Valley School District, 441 Pa. 502 (1971), where again it must be shown that a clear legal right existed in plaintiff with a corresponding duty in defendant, and the absence of any other appropriate remedy. There is no doubt that plaintiff has met the burden created by this test. It has shown that a timely request for subdivision approval was made and same was, in fact, approved before any attempts at adverse rezoning were made. Therefore, as this court held in Brady Brothers Company et al. v. Whitemarsh Township, 93 Montg. 133 (1969), plaintiff had a right to rely on its subdivision approval and the zoning law as it then existed. The zoning regulating the tract in question permits duplex and triplex construction and use. A clear legal right exists in plaintiff for building permits for these types of dwellings, and under applicable ordinances and enabling legislation, there is a corresponding legal duty upon the township to issue them, subject, of course, to any other validly existing ordinances pertaining to the applications, e.g., the township building code. By reason of these conclusions, we need not explore the alternative contention of plaintiff that the rezoning ordinance was special legislation directed solely at plaintiff's land.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the cause.

2. The subdivision plan filed by appellants was properly approved by the Township Board of Commissioners on April 9, 1970.

3. Plaintiff had a right to rely on the then existing zoning regulations for the purpose of developing its tract.

4. The amendment to the zoning ordinance has no legal effect on plaintiff's subdivision plan. because its cause of action arose prior to the "pending" zoning ordinance amendment.

5. The application for building permits on lots No. 10, 11, 13, and 16 should be granted by the responsible township officers, and the permits issued.

6. Defendants should pay the costs of this proceeding.

## DECREE NISI

And now, this June 24, 1971, it is ordered, adjudged and decreed that Charles Bates, Building Inspector of Abington Township and/or Fred L. Schaeffer, Manager of Abington Township, issue building permits for the construction of duplex dwellings on lots Nos. 10, 13, and 16, and a triplex dwelling on lot No. 11 of plaintiff's subdivision, subject to the requirements of any other ordinances or regulations validly pertaining thereto; defendants are ordered to pay the costs; this decree shall become the final decree unless exceptions hereto are filed within 20 days.

## OPINION SUR EXCEPTIONS TO ADJUDICATION

HONEYMAN, J., February 9, 1972.—Counsel for defendants had filed numerous exceptions to the

adjudication. Exception no. 1 to finding of fact no. 2 is technically correct and same is modified to the extent that plaintiff at all times material was the equitable owner of the tract in question up to January 23, 1970, when it came into legal title of record. This in no way affects the issues in the case or the decision. Exception no. 6 to finding of fact no. 7 is technically correct and same is modified to the extent that the previous proposed use of the tract in question by plaintiff's predecessor in title was for 48 apartment units instead of 50, but this change does not affect the issues or decision in the case. There is no merit to any of the other 20 exceptions and same are dismissed.

The court en banc, after oral argument, has considered the briefs and reviewed the record and adjudication, and is satisfied that the decision of the trial judge was factually supported by the evidence and the law was accurately and appropriately applied thereto.

Subsequent to the filing of the exceptions on July 14, 1971, a petition to intervene herein was filed by separate counsel on behalf of certain owners of property allegedly situate in the immediate neighborhood of the subject premises. These were filed on October 26, 1971, four months after adjudication and more than 14 months after the commencement of this action in mandamus. Plaintiff's counsel promptly filed preliminary objections thereto, which must be sustained because the petition was not timely filed and the proposed intervenors have no standing in this action under Pennsylvania Rule of Civil Procedure 2327.

## ORDER

And now, this February 9, 1972, all exceptions to the adjudication are dismissed with the exception of the two indicated in the foregoing opinion and in regard to them findings of fact nos. 2 and 7 are modi-

fied as reflected in the opinion; the decree nisi of June 24, 1971, is ordered to become the final decree of the court and the prothonotary is directed to enter judgment thereon upon praecipe being filed; the preliminary objections to the petition for intervention are sustained and same is dismissed.